In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 14-3789

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TITAN INTERNATIONAL, INC.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 14-C-3263 — **Richard Mills**, *Judge.*

———————————

ARGUED SEPTEMBER 21, 2015 — DECIDED FEBRUARY 1, 2016

———————————

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* In February of 2014, the Internal Revenue Service issued an administrative summons to Titan International, Inc., to inspect its 2009 books and records in connection with an audit of the company's 2010 tax return. Titan had taken an operating-loss carryforward in the 2010 tax year for a loss that occurred in 2009. Titan had claimed this same loss in 2009, and the IRS had already audited the company's return for that tax year.

Titan refused to comply with the 2014 summons because the IRS had inspected the same records during its audit of the company's 2009 return. Titan's refusal was based on 26 U.S.C. § 7605(b), which provides that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless … the [Treasury] Secretary … notifies the taxpayer in writing that an additional inspection is necessary." Because the Secretary had not issued this notice, Titan asserted that the reinspection of its 2009 records was not permitted. The district court disagreed and ordered Titan to comply with the summons.

We affirm. Section 7605(b) applies if the IRS seeks to inspect a taxpayer's records when auditing a tax liability for a given year when the agency has already inspected the records in auditing the taxpayer's liability for that same tax year. It does not apply when the IRS seeks already-inspected records for an audit of a *different* tax year. Because the IRS summoned the 2009 records in connection with an audit of Titan's 2010 return—not its 2009 return—§ 7605(b) imposes no barrier here.

## I. Background

Titan is an Illinois manufacturer of parts for off-road equipment. In 2010 the IRS audited Titan's 2009 tax return. During the course of that audit, the agency summoned Titan's 2009 general ledger, its 2009 airplane flight logs, and other 2009 business travel documents. Titan complied with that summons, and the audit concluded with a reduction of

Titan's claimed net operating loss for that year.[1] Titan accepted this adjustment to its 2009 tax liability and the audit was closed.

In 2014 the IRS opened an audit of Titan's 2010 tax return and again summoned Titan's 2009 general ledger, flight logs, and travel records. This inquiry related to an operating-loss carryforward Titan had claimed on its 2010 return. Citing § 7605(b), Titan refused to comply, asserting that the statute blocks inspection of already-inspected records unless the Treasury Secretary makes a finding of necessity and notifies the taxpayer in writing of that finding. No such notice was sent before the IRS summoned Titan's 2009 records for the 2010 audit.

The United States, on behalf of the IRS, filed a petition in the district court to enforce the summons. The court rejected Titan's interpretation of § 7605(b) and ordered it to comply.

## II. Discussion

Titan's appeal raises only a legal question about the meaning of § 7605(b). Questions of statutory interpretation are subject to de novo review. *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 704 (7th Cir. 2011). We begin with the relevant text of the statute:

---

[1] A net operating loss is a deduction valued as the excess of a business's deductions over the business's income for a given year. A net-operating-loss deduction earned in one year can be applied to reduce the business's tax liability of a later year (i.e., a year in which the business's income was greater than its deductions). This is called a net-operating-loss carryforward.

> No taxpayer shall be subjected to unnecessary examination or investigations, and *only one inspection of a taxpayer's books of account shall be made for each taxable year* unless … the Secretary … notifies the taxpayer in writing that an additional inspection is necessary.

§ 7605(b) (emphasis added).

Titan argues that the statute limits the IRS to a single inspection of a "taxpayer's books of account" *created for* a particular taxable year, unless the Secretary finds a second inspection "necessary" and sends written notice to that effect. In other words, Titan reads "for each taxable year" as modifying "taxpayer's books of account." On this interpretation, Titan's 2009 records—already inspected during the audit of its return for tax year 2009—cannot be inspected again in connection with the audit of its 2010 tax return (or any subsequent tax-year audit, for that matter) unless the Secretary first sends written notice of necessity.

Titan's interpretation is disjointed and curiously omits some of the language of the statute. The key statutory phrase is this: "[O]nly one inspection of a taxpayer's books of account shall be made for each taxable year." The more natural reading of this language limits the IRS to one inspection of a taxpayer's books per audit of a given year's tax return (subject, of course, to notice and a finding by the Secretary that a second inspection is necessary). Read in this more natural way, § 7605(b) does not bar the summons of Titan's 2009 records for the purpose of auditing its 2010 tax return.

Two cases, one from this court and one from the tax court, confirm this interpretation of the statute. In *Reineman v. United States*, the taxpayers purchased six horses in 1954 for their horse-breeding business. 301 F.2d 267, 268 (7th Cir. 1962). They then deducted the entire cost of the horses on their 1954 tax return. *Id.* In 1956 the IRS audited the 1954 tax return and adjusted that deduction. *Id.* at 269. Later the IRS audited the taxpayers' 1955 tax return; in the process the agency reopened the 1954 audit (without written notice from the Secretary) and *again* adjusted the deduction for the six horses. *Id.* at 269–71. The 1954 records inspected by the IRS to adjust the deduction for the second time were wholly irrelevant to the 1955 audit. *Id.* at 271. We concluded that the second inspection of those records violated § 7605(b) because it was an "additional inspection" of the taxpayers' books for the purpose of reopening the 1954 tax return. *Id.* at 272.

The second relevant case is *Digby v. Commissioner*, 103 T.C. 441 (1994). There the IRS audited a married couple's 1987 tax return and allowed them to claim a pass-through loss for that year from their S corporation. *Id.* at 443. In the course of that audit, the IRS inspected records showing the couple's basis in its S corporation stock. *See id.* at 444. The IRS later audited their 1988 tax return, a year in which the couple claimed another pass-through loss from the same S corporation. *Id.* To complete this audit, the IRS necessarily summoned the same basis records it inspected for the 1987 audit; as the tax court explained, the agency was "in possession of the information necessary to make a [basis] determination for 1988 and/or 1987." *Id.* at 448. Based on these summoned records, the IRS determined that the couple's basis was inadequate to support the pass-through loss for 1988 *and* 1987, despite its prior 1987 audit. *Id.* at 445–46. The

IRS therefore disallowed the pass-through loss for both years. *Id.* at 446.

The tax court concluded that the second inspection of the records was not a violation of § 7605(b) because that inspection was undertaken for the purpose of examining the 1988 tax return, and—unlike *Reineman*—those records were necessary to complete that audit. *Id.* at 448–49. The court ruled that an additional *adjustment* of the tax return for an earlier taxable year is not a violation of § 7605(b) so long as it was not coupled with an additional *inspection* of the taxpayer's books for the purpose of adjusting that year's tax liability. *Id.*

This case is more like *Digby* than *Reineman*. The IRS first inspected Titan's 2009 records to verify its net operating loss in connection with an audit of its 2009 tax return. The IRS now seeks to inspect those same records for the purpose of auditing Titan's 2010 tax return in order to determine the validity of its 2010 net-operating-loss carryforward. Much like the pass-through loss at issue in *Digby* (and unlike the deduction at issue in *Reineman*), the net-operating-loss carryforward on the 2010 tax return cannot be verified unless the IRS inspects the 2009 records. Accordingly, the summons for inspection of Titan's 2009 books and records for the purpose of auditing its 2010 tax return does not require written notice and a finding of necessity by the Secretary under § 7605(b).

AFFIRMED.